KELLEY DRYE & WARREN LLP
A LIMITED LIABILITY PARTNERSHIP
101 PARK AVENUE
NEW YORK, NEW YORK 10178
(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

JOSEPH A. BOYLE
DIRECT LINE: (973) 503-5920
EMAIL: jboyle@kelleydrye.com

December 19, 2006

**VIA FEDEX**

Noreen Dresser
Contracting Officer
U.S. Army Corps of Engineers
New York District
Real Estate, CENAN-RE
26 Federal Plaza
New York, NY 10278-0090

Re: LUK Price List/Carpet Installation
801 Housing, Ft. Drum, New York

Dear Ms. Dresser:

We represent LUK, Inc. ("LUK") in connection with the above-referenced matter. We write on behalf of LUK to request a contracting officer's decision regarding the proper task times/price list to be used to calculate the cost of carpet installation and removal at each of the subject 801 Housing Units.[1] In addition, LUK also requests a contracting officer's decision regarding the amount LUK should be reimbursed for replacing preventative maintenance carpeting ("PM Carpeting"), *i.e.*, carpeting that the Army requires to be replaced after 8 years, regardless of its condition, and for which it refuses to reimburse LUK.

---

[1] LUK maintains that it previously submitted a request for a contracting officer's decision regarding this issue in August 2004. At the direction of your letter dated November 28, 2005, however, in which you state that "neither [you], as Contracting Officer, nor the Fort Drum Housing Office has, after extensive search, discovered any record of any such request," LUK re-submits its request and attaches the Certification of Walter Uccellini hereto.

**Task Times/Price List**

At issue is the price list LUK uses to determine the cost of carpet installation and removal for each Unit, and the Army's disagreement with same. In the Settlement Agreement between LUK and the Army dated January 24, 2002, concerning ASBCA Nos. 50659, 52368 and 52793 ("Settlement Agreement") (a copy of which is attached hereto at Tab 1), the parties agreed that "future material prices billed by LUK for repair of occupant damage will be at the full price list price according to the then current price list established under Lease Exhibit C, Section C.1.t., not at the actual price." (*See* Tab 1, Settlement Agreement at ¶ 7). At the time of the Settlement Agreement, LUK was responsible for removing and installing carpeting at all of the Units. On September 11, 2002, the Army accepted LUK's proposal of the July 25, 2002 Price List as the then current price list. (A copy of the September 11, 2002 letter is attached hereto at Tab 2). In October 2002, the Army assumed control of the carpet installation and removal duties from LUK and chose to replace all carpeting itself. In November 2003, the Army again gave to LUK the responsibility for removing and installing carpeting for the Units. On September 26, 2003, the Army accepted LUK's proposed June 30, 2003 price list except with respect to the carpet installation labor rate for which the Army began using its own price list, with much lower rates/times than the agreed upon price list, to calculate the cost of carpet installation. (A copy of the September 26, 2003 letter is attached hereto at Tab 3). On October 29, 2004, the Army accepted LUK's proposed July 31, 2004 price list except for carpet shampoo costs, and continued to use its own arbitrary carpet installation labor rates rather than LUK's proposed rates. (A copy of the October 29, 2004 letter is attached hereto at Tab 4). On August 30, 2005, the Army accepted LUK's proposed June 30, 2005 price list, but again excluded shampoo costs and continued to use its own arbitrary carpet installation labor rates rather than LUK's proposed rates. (A copy of the August 30, 2005 letter is attached hereto at Tab 5). On November 29, 2006, the Army Accepted LUK's proposed October 15, 2006 price list, but once again excluded shampoo costs and continued to use its own arbitrary carpet installation labor rates rather than LUK's proposed rates. (A copy of the November 29, 2006 letter is attached hereto at Tab 6).

From November 2003 to date, despite approving LUK's annual price list submissions, the Army has not paid LUK at the proposed price list amounts with respect to carpet installation labor rates and shampoo costs. Instead, it has reimbursed LUK at its arbitrarily reduced price list amounts/rates for these items. The Army, therefore, has been under-reimbursing LUK for carpet installation and removal since November 2003.

**PM Carpeting**

The Army has refused to reimburse LUK for the replacement of PM Carpeting dating back to 2002. In the Settlement Agreement, the parties agreed that the material prices billed by LUK "will not be paid on a prorated basis." (*See* Tab 1, Settlement Agreement at ¶ 7).

Beginning in March 2002, however, the Army instituted a new policy that carpet that is 8 years old must be replaced, regardless of its condition, as preventative maintenance, and that LUK would not be reimbursed for removing and replacing this carpet. In so doing, the Army has been *de facto* prorating the value of the carpet to zero in violation of the Settlement Agreement. The Army should reimburse LUK for all the PM Carpeting it has replaced since 2002 and for which it has not paid LUK. The Army has never provided LUK with a reason for instituting its policy of replacing the carpet (regardless of condition) when it reaches a certain age. LUK should be reimbursed for the time, money and materials it has spent, and will continue to spend, in replacing the PM Carpeting.

**Request for a Contracting Officer's Decision**

By means of this letter, LUK not only seeks reimbursement for the task time/price list items from November 2003 to the present at the agreed upon price list amounts for all items, but also seeks a determination that the agreed upon price list amounts are proper and should be implemented retroactively to November 2003 for all price list items, including carpet installation labor rates and shampoo costs. In addition, LUK is seeking reimbursement for the expenses it has incurred in replacing PM Carpeting from 2002 to the present, for which the Army has not reimbursed LUK.[2]

As such, we hereby request, on behalf of LUK, a contracting officer's decision: (1) finding that the agreed upon task times/price lists constitute the proper amounts of labor costs for all price list items that the Army should pay to LUK for carpet installation and removal going forward, and should be implemented retroactively to November 2003; (2) ordering the Army to reimburse LUK in the amount of $358,647.62 for the task times/price list items for which it has been under-reimbursing LUK since November 2003;[3] and (3) ordering the Army to reimburse

---

2 While LUK seeks reimbursement to the present date for both the task time/price list items and PM Carpeting amounts for which the Army has under-reimbursed LUK, it submits data only through August 2006, *i.e.*, the most recent date for which LUK has calculated the deficiencies. LUK reserves the right to submit additional data as necessary to determine the full amount that LUK should be reimbursed to the date of a final decision in this matter.

3 LUK calculated the $358,647.62 figure for under-reimbursement of the task times/price list items by: (a) calculating the difference between the actual amount paid by the Army to LUK for carpet removal and installation and the amount that LUK should have been reimbursed for same for the period from November 2003 through August 2006 using LUK's proposed task times/price list (*i.e.*, $17,929.22 for 2003; $122,088.30 for 2004; $127,394.79 for 2005; and $91,235.31 through August 2006) which is the yearly under-reimbursed amount; and (b) adding the totals of the yearly under-reimbursed amounts from November 2003 through August 2006 ($17,929.22 + $122,088.30 + $127,394.79 + $91,235.31 = $358,647.62). (A summary spreadsheet detailing the yearly under-reimbursed amounts for carpet removal and installation

LUK in the amount $176,565.42 for the replacement of PM Carpeting for which it has under-reimbursed LUK since 2002.[4]

If you have any questions or need any further information, please contact the undersigned.

Nothing in this letter should be construed as a waiver of any of LUK's rights at law or equity, all of which are expressly reserved.

Very truly yours,

Joseph A. Boyle

JAB:kn
Encls.
cc: Michael J. Uccellini (VIA FIRST CLASS MAIL W/ENCS.)
Frank L. Carpenter (VIA FIRST CLASS MAIL W/ENCS.)

---

from 2002 through August 2006 is attached hereto at Tab 7, with the supporting spreadsheets providing the under-reimbursed amounts of the task times/price list items for the years 2003, 2004, 2005 and 2006 (through 2006) attached hereto at Tabs 8, 9, 10 and 11 respectively).

4 LUK calculated the $176,565.42 figure of under-reimbursement of PM Carpeting by: (a) using the proposed task times/price list figures to calculate the yearly amount of expenses for replacing PM Carpeting for which the Army did not reimburse LUK from 2002 through August 2006 (*i.e.*, $52,114.62 for 2002; $15,751.41 for 2003; $73,747.03 for 2004; $26,994.23 for 2005; and $7,958.13 through August 2006); and (b) adding the totals of the yearly under-reimbursed amounts from 2002 through August 2006 ($52,114.62 + $15,751.41 + $73,747.03 + $26,994.23 + $7,958.13 = $176,565.42). (*See* Tab 7. *See also* the supporting spreadsheets providing the under-reimbursed amounts of PM Carpeting for the years 2002, 2003, 2004, 2005 and 2006 (through August) attached hereto at Tabs 12, 13, 14, 15 and 16 respectively).

## CERTIFICATION OF WALTER UCCELLINI

I hereby certify, pursuant to the Contracts Disputes Act, 41 U.S.C. §§ 601-613 and Article XVI (the Disputes Clause) of the leases entered into between LUK and United States Government, that:

(a) LUK's instant claim is made in good faith;

(b) the supporting data are accurate and complete to the best of LUK's knowledge and belief;

(c) the amount requested accurately reflects the contract adjustment for which LUK believes the United States Government is liable; and

(d) I am duly authorized to certify the claim on behalf of LUK.

Dated: December 15th, 2006

Walter Uccellini,
On behalf of LUK, Inc.

# 1

CC: JTd
File
MM. - Exh't

BEFORE THE ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| In the Matter of the Appeal of<br><br>LUK, Inc.<br><br>Under Lease Nos. DACA65-85-9-0001<br>DACA65-85-9-0002 | ASBCA Nos.<br>50659<br>52368<br>52793 |

SETTLEMENT AGREEMENT

This Agreement is made between the United States of America, acting by and through the United States Army Corps of Engineers, New York District ("the Government"), and LUK, Inc. ("LUK").

WHEREAS, Lease Nos. DACA65-85-9-0001 and DACA65-85-9-0002 for the lease of Section 801 Army Family Housing ("the Housing" or "the Premises") at Fort Drum, New York were awarded to LUK by the Government on February 1, 1988 ("the Leases"); and

WHEREAS, by letter dated December 19, 1995, the Government sought repayment of $134,770 for alleged overpayments made to LUK for material used in repair of occupant damages to the Premises; and

WHEREAS, by Contracting Officer's Decision of February 27, 1997, the Government's right to this sum was affirmed by the Government; and

WHEREAS, in February and March of 1994, the Government removed twenty four occupants from the Premises and suspended rent for those housing units due to flooding; and

WHEREAS, LUK constructed a flood control system; and

WHEREAS, LUK engaged in restructuring of the financing of the Premises in 1995; and

WHEREAS, as part of that restructuring the Government executed "Estoppel Certificates" on July 14, 1995; and

WHEREAS, LUK appealed to the Armed Services Board of Contract Appeals ("the Board") by Notice of Appeal dated March 27, 1997, seeking relief from the Government's claim of $134,770, as well as from the Government's paying those materials at a prorated rate; and

WHEREAS, said appeal was docketed as ASBCA Nos. 50659 and 52368; and

WHEREAS, LUK appealed on December 11, 1997 to the United States Court of Federal Claims concerning the Government's suspension of rent on the twenty four units, the construction of the flood control system, and the Government's not signing the Estoppel certificates earlier than July 14, 1995; and

WHEREAS, that appeal was remanded by the Court of

Federal Claims to the Board and was docketed as ASBCA No. 52793; and

WHEREAS, there is pending in the United States Court of Federal Claims an appeal filed by LUK seeking payment for underpayment of carpet replacement charges for calendar years 1994 to present; and

WHEREAS, LUK has filed an appeal in this action seeking payment for underpayment of carpet replacement charges for the calendar years 1992 and 1993, which appeal was also docketed as ASBCA Nos. 50659 and 52368; and

WHEREAS, following negotiations between the parties, LUK and the Government determined that it was in their mutual interest to compromise and settle these Appeals, under the terms and conditions stated herein.

THEREFORE, in consideration of the foregoing, the parties agree as follows:

1. The Government agrees to pay to LUK, and LUK agrees to accept the sum of FOUR MILLION, TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($4,250,000), which sum includes interest under the Contract Disputes Act, in full and complete settlement of the claims.

2. Excepting the obligation created by this Agreement and in consideration for the receipt of all sums due or to become due under this Agreement, LUK fully releases the Government, as well as its agencies, officers, agents, employees, and former employees, including but not limited to the United States Army Corps of Engineers and Fort Drum, their officers, agents, employees, and former employees from any and all claims, appeals, lawsuits, administrative actions, or other requests for compensation or other relief, either individually or in their official capacities, for any and all claims arising from or related to the subject leases, as well as ASBCA Nos. 48053 and 48420 and Court of Federal Claims No. 99-705C.

3. LUK further agrees, promises, and warrants that neither it nor any subsidiary, affiliate, or entity related to it will bring any action of any nature, whether under law, equity or administrative law against the United States or any agency, officer, agent, employee, or former employee thereof, either individually or in their official capacities, requesting compensation or other relief arising from the circumstances or facts of the claims which are the subject of this

Agreement, as well as ASBCA Nos. 48053 and 48420 and Court of Federal Claims No. 99-705C, except as may be necessary to enforce LUK's rights under this Agreement.

4. Excepting the obligations created by this Agreement and in consideration for the receipt of all sums due or to become due under this Agreement, the Government fully releases LUK, its shareholders, directors, officers, agents, employees, and former employees, from any and all claims, actions, appeals, lawsuits, administrative actions, or other requests for compensation or other relief, for any and all claims arising from or related to the subject leases, as well as ASBCA Nos. 48053 and 48420 and Court of Federal Claims No. 99-705C.

5. The Government further agrees, promises, and warrants that neither it nor any subsidiary, affiliate, or entity related to it will bring any action of any nature, whether under law, equity or administrative law against LUK, its shareholders, directors, officers, agent, employee, or former employee thereof, either individually or in their official capacities,

requesting compensation or other relief arising from the circumstances or facts of the claims which are the subject of this Agreement, as well as ASBCA Nos. 48053 and 48420 and Court of Federal Claims No. 99-705C, except as may be necessary to enforce the Government's rights under this Agreement.

6. The Government further agrees that it will withdraw and not reinstate its claim for $134,770 for material overcharges and will not file further claims for any other such alleged overcharges, past, present or future.

7. The parties agree that future material prices billed by LUK for repair of occupant damage will be at the full price list price according to the then current price list established under Lease Exhibit C, Section C.1.t., not at the actual price. The parties also agree such material prices will not be paid on a prorated basis.

8. The parties have agreed to revise the unit turnover process and to reduce to ZERO ($0) the "Accrual Account", as defined in the Lease, as set forth in the attached Exhibit A. The parties further agree to execute a Supplemental Agreement consistent with the terms and conditions set forth

in Exhibit A, which will supersede any and all applicable lease terms.

9. The parties agree that the amount credited to date to the "Accrual Account" specified by the Leases, now estimated by the Government at $3.4 million, will be reduced, effective December 31, 2001, to ZERO ($0).

10. The parties reaffirm the provisions of Lease Exhibit C, Section C.1.s: "Damages to a housing unit or to other improvements within the project which are beyond normal wear and tear and are caused by the government or an occupant, his dependents, or invited guests, which are not corrected by government or occupant, shall be repaired by the owner…."

11. Appellant agrees to file a Stipulation of Dismissal with the Armed Services Board of Contract Appeals seeking dismissal with prejudice of ASBCA Nos. 50659, 52368 and 52793 subject to reinstatement only in the event that the settlement is not consummated as agreed herein.

12. LUK agrees to notify the United States Court of Federal Claims and request that the Court stay all proceedings in Court of Federal Claims No. 99-

705C pending consummation of this Settlement Agreement.

13. Upon receipt of the settlement amount as provided in Paragraph 1, LUK shall request that the Court of Federal Claims dismiss with prejudice No. 99-705C.

14. Appellant agrees not to file any further claims for carpet underpayments during any period to date.

15. The Government agrees to immediately seek to determine availability of funds to pay the settlement amount. After sixty days the Government agrees to initiate the process for obtaining approval for the use of the Judgment Fund consistent with EFARS Appendix A. If payment of the settlement amount is not made within ninety days of the date of this Agreement, the Government agrees to pay LUK interest on the principal amount at the then current applicable rate.

16. The terms and conditions of this Settlement Agreement shall be confidential and shall not be disclosed by the parties or their agents to any third party, except to accountants, attorneys, or other advisors unless required by order of a court of competent jurisdiction.

1/24/02
Date

Walter Uccellini
LUK, Inc.

1/24/02
Date

Thomas J. Gallo, Esq.
Robins, Kaplan, Miller & Ciresi
2600 One Atlanta Plaza
Atlanta, Georgia 30326
Attorney for Appellant

1/24/02
Date

Donald M. Harris
James E. Mercer
Donald M. Harris
James E. Mercer
Engineer Trial Attorneys
US Army Engineer District, New York
Attorneys for Respondent

24 JAN 02
Date

James Corriveau
Deputy Director of Public Works
Fort Drum, New York

1/24/02
Date

Noreen D. Dresser
Noreen D. Dresser
Acting Chief, Real Estate Division
Contracting Officer

# 2

DEPARTMENT OF THE ARMY
HEADQUARTERS 10TH MOUNTAIN DIVISION (LIGHT INFANTRY) AND FORT DRUM
FORT DRUM, NEW YORK 13602 5000

September 11, 2002

REPLY TO
ATTENTION OF

801 Administration Branch

SUBJECT. Lease No.'s DACA65-9-85-0001, DACA65-9-85-0002, Section 801 Army Community Housing, Fort Drum, New York, Maintenance and Repair Price List

United Realty Management, Corporation
ATTN Mr. Mike Miller
1620 Huntington Street
Watertown, NY 13601

Dear Mr. Miller,

In light of pending changes to the price list due to travel costs, this office recognizes and will utilize your submission dated July 25, 2002 for the period of September 1 until October 1, 2002. Per our conversation, September 10, 2002, you will issue an amended price list that will define travel cost as a separate line item, without being incorporated into material and labor costs

Commencing October 1, 2002, the new price list will become effective with each work authorization number receiving only one travel cost.

Sincerely,

James W. Pierce
801 Housing Contracting Officer's
Representative

Copies Furnished:
CENAN-RE
CENAN-RE-OC
Frank Carpenter

# 3

**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 10TH MOUNTAIN DIVISION (LIGHT INFANTRY) AND FORT DRUM
FORT DRUM, NEW YORK 13602-5000

REPLY TO
ATTENTION OF

September 26, 2003

801 Administration Branch

SUBJECT: Lease No.'s DACA65-9-85-0001, DACA65-9-85-0002, Section 801 Army Community Housing, Fort Drum, New York; Maintenance and Repair Price List

United Realty Management Corporation
ATTN: Mr. Mike Miller
1620 Huntington Street
Watertown, NY 13601

received
9/30/03

Dear Mr. Miller,

The New York District Army Corps of Engineers, in conjunction with Housing Management, has reviewed the proposed price list of 30 June 2003 submitted by LUK / URMC, Incorporated. I am approving prices for the proposed price list with the following exceptions:

a.. After review of the 2003 Contractor's Pricing Guide of Means Residential Square Foot Costs, carpet installation labor hours were found to be in excess of current industry standards. After numerous requests, LUK / URMC has failed to provide either an adjustment or justification; therefore, effective 19 September 2003 this office has taken steps to bring installation hours in line.

b. Carpet shampoo costs also seem excessive. These costs are still under review and a decision to approve or disapprove will be rendered at a later date.

The new price list will become effective 15 October 2003. If you wish to dispute the items in question, please follow the procedures in the dispute clauses of your leases.

Sincerely,

James W. Pierce
801 Housing Contracting Officer's Representative

Copies Furnished:
CENAN-RE
CENAN-OC
Frank Carpenter

RECEIVED SEP 29 2003

# 4

DEPARTMENT OF THE ARMY
HEADQUARTERS, 10TH MOUNTAIN DIVISION (LIGHT INFANTRY) AND FORT DRUM
FORT DRUM, NEW YORK 13602-5000

REPLY TO
ATTENTION OF

October 29, 2004

801 Administration Branch

SUBJECT: Lease No. 's DACA65-9-85-0001, DACA65-9-85-0002, Section 801 Army Community Housing, Fort Drum, New York; Maintenance and Repair Price List

United Realty Management Corporation
ATTN: Mr. Mike Miller
1015 Water Street
Watertown, NY 13601

Dear Mr. Miller,

The New York District Army Corps of Engineers, in conjunction with Housing Management, has reviewed the proposed price list of July 31, 2004 (Tax Update October 15, 2004) submitted by LUK/URMC, Incorporated. I am approving prices for the proposed price list with the following exception:

- Carpet shampoo costs are excessive compared to industry standard.

The new price list will become effective November 1, 2004. If you wish to dispute the item in question, please follow the procedures in the dispute clauses of your leases.

Sincerely,

Marcia M. Brown

Marcia M. Brown
801 Housing Contracting Officer's
Representative

Copies Furnished:
CENAN-RE
CENAN-OC
Frank Carpenter

5

DEPARTMENT OF THE ARMY
HEADQUARTERS, 10TH MOUNTAIN DIVISION (LIGHT INFANTRY) AND FORT DRUM
FORT DRUM, NEW YORK 13602-5000

REPLY TO
ATTENTION OF

August 30, 2005

801 Administration Branch

SUBJECT: Lease No. 's DACA65-9-85-0001, DACA65-9-85-0002, Section 801 Army Community Housing, Fort Drum, New York; Maintenance and Repair Price List

United Realty Management Corporation
ATTN: Mr. Mike Miller
1015 Water Street
Watertown, NY 13601

Dear Mr. Miller,

The New York District Army Corps of Engineers, in conjunction with Housing Management, has reviewed the proposed price list of June 30, 2005 submitted by LUK/URMC, Incorporated. I am approving prices for the proposed price list with the following exception:

- Carpet shampoo costs are excessive compared to industry standard.

The new price list will become effective September 1, 2005. If you wish to dispute the item in question, please follow the procedures in the dispute clauses of your leases.

Sincerely,

Marcia M. Brown
Marcia M. Brown
801 Housing Contracting Officer's
Representative

Copies Furnished:
CENAN-RE
Frank Carpenter

# 6

**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 10TH MOUNTAIN DIVISION (LIGHT INFANTRY) AND FORT DRUM
FORT DRUM, NEW YORK 13602-5000

REPLY TO
ATTENTION OF

November 29, 2006

801 Administration Branch

SUBJECT: Lease No. 's DACA65-9-85-0001, DACA65-9-85-0002, Section 801 Army Community Housing, Fort Drum, New York; Maintenance and Repair Price List

United Realty Management Corporation
ATTN: Mr. Mike Miller
1015 Water Street
Watertown, NY 13601

Dear Mr. Miller,

The New York District Army Corps of Engineers, in conjunction with Housing Management, has reviewed the proposed price list of October 15, 2006 submitted by LUK/URMC, Incorporated. We are approving prices for the proposed price list with the following exceptions:

- Carpet shampoo costs are excessive compared to industry standard.

- Carpet Installation labor hours were found to be in excess of industry standard in September 2003. URMC has failed to provide an adjustment or submit a request for a Contracting Officer's decision.

The new price list will become effective December 1, 2006. If you wish to dispute the items in question, please follow the procedures in the dispute clauses of your leases.

Sincerely,

Marcia M Brown

Marcia M. Brown
801 Housing Contracting Officer's
Representative

Copies Furnished:
CENAN-RE
Frank Carpenter

7

**Carpet Audit 2002-2006**
**PM Carpet and Housing vs Price List Summary Sheet**

| Year | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount | Annual Dispute Amount |
|---|---|---|---|---|
| **2002** | | | | $ 52,114.62 |
| PM Carpet | $ - | $ 52,114.62 | $ 52,114.62 | |
| Housing vs Price List | $ - | $ - | $ - | |
| **2003** | | | | $ 33,680.63 |
| PM Carpet | $ - | $ 15,751.41 | $ 15,751.41 | |
| Housing vs Price List | $ 48,453.40 | $ 66,382.62 | $ 17,929.22 | |
| **2004** | | | | $ 195,835.33 |
| PM Carpet | $ - | $ 73,747.03 | $ 73,747.03 | |
| Housing vs Price List | $ 406,986.40 | $ 529,074.70 | $ 122,088.30 | |
| **2005** | | | | $ 154,389.02 |
| PM Carpet | $ - | $ 26,994.23 | $ 26,994.23 | |
| Housing vs Price List | $ 412,324.97 | $ 539,719.76 | $ 127,394.79 | |
| **2006 (Through August)** | | | | $ 99,193.44 |
| PM Carpet | $ - | $ 7,958.13 | $ 7,958.13 | |
| Housing vs Price List | $ 260,495.03 | $ 351,730.34 | $ 91,235.31 | |
| | | | | |
| **PM Carpet Total** | $ - | $ 176,565.42 | $ 176,565.42 | |
| | | | | |
| **Housing vs Price List Total** | $ 1,128,259.80 | $ 1,486,907.42 | $ 358,647.62 | |
| | | | | |
| **Combined Totals** | $ 1,128,259.80 | $ 1,663,472.84 | $ 535,213.04 | |

Carpet Audit 2002-2006
PM Carpet and Housing vs Price List Summary Sheet

| 2002 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **PM Carpet** | | | |
| January | $ - | $ - | $ - |
| February | $ - | $ 12,083.80 | $ 12,083.80 |
| March | $ - | $ 4,014.94 | $ 4,014.94 |
| April | $ - | $ 4,460.88 | $ 4,460.88 |
| May | $ - | $ 7,990.86 | $ 7,990.86 |
| June | $ - | $ 9,677.25 | $ 9,677.25 |
| July | $ - | $ 7,219.60 | $ 7,219.60 |
| August | $ - | $ 3,054.04 | $ 3,054.04 |
| September | $ - | $ 3,613.25 | $ 3,613.25 |
| October | $ - | $ - | $ - |
| November | $ - | $ - | $ - |
| December | $ - | $ - | $ - |
| **PM Carpet Total** | $ - | $ 52,114.62 | $ 52,114.62 |

| 2002 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **Housing vs Price List** | | | |
| **Housing vs Price List Total** | $ - | $ - | $ - |

**Carpet Audit 2002-2006**
**PM Carpet and Housing vs Price List Summary Sheet**

| 2003 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **PM Carpet** | | | |
| January | $ - | $ - | $ - |
| February | $ - | | $ - |
| March | $ - | $ 41.68 | $ 41.68 |
| April | $ - | | $ - |
| May | $ - | | $ - |
| June | $ - | $ 3,048.16 | $ 3,048.16 |
| July | $ - | $ 342.72 | $ 342.72 |
| August | $ - | $ 5,797.20 | $ 5,797.20 |
| September | $ - | $ 1,161.44 | $ 1,161.44 |
| October | $ - | $ 1,079.84 | $ 1,079.84 |
| November | $ - | $ 843.20 | $ 843.20 |
| December | $ - | $ 3,437.17 | $ 3,437.17 |
| **PM Carpet Total** | $ - | $ 15,751.41 | $ 15,751.41 |

| 2003 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **Housing vs Price List** | | | |
| November | $ 22,045.23 | $ 29,860.67 | $ 7,815.44 |
| December | $ 26,408.17 | $ 36,521.95 | $ 10,113.78 |
| **Housing vs Price List Total** | $ 48,453.40 | $ 66,382.62 | $ 17,929.22 |

**Carpet Audit 2002-2006**
**PM Carpet and Housing vs Price List Summary Sheet**

| 2004 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **PM Carpet** | | | |
| January | $ - | $ 4,137.62 | $ 4,137.62 |
| February | $ - | $ 3,240.64 | $ 3,240.64 |
| March | $ - | $ 5,743.77 | $ 5,743.77 |
| April | $ - | $ 7,986.88 | $ 7,986.88 |
| May | $ - | $ - | $ - |
| June | $ - | $ 1,718.20 | $ 1,718.20 |
| July | $ - | $ 10,683.69 | $ 10,683.69 |
| August | $ - | $ 20,743.57 | $ 20,743.57 |
| September | $ - | $ 2,067.52 | $ 2,067.52 |
| October | $ - | $ 10,543.82 | $ 10,543.82 |
| November | $ - | $ 5,273.88 | $ 5,273.88 |
| December | $ - | $ 1,607.44 | $ 1,607.44 |
| **PM Carpet Total** | $ - | $ 73,747.03 | $ 73,747.03 |

| 2004 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **Housing vs Price List** | | | |
| January | $ 33,322.27 | $ 44,593.53 | $ 11,271.26 |
| February | $ 26,497.37 | $ 35,571.97 | $ 9,074.60 |
| March | $ 28,570.31 | $ 36,946.09 | $ 8,375.78 |
| April | $ 35,633.87 | $ 46,959.78 | $ 11,325.91 |
| May | $ 25,274.51 | $ 33,794.27 | $ 8,519.76 |
| June | $ 19,361.17 | $ 25,022.13 | $ 5,660.96 |
| July | $ 33,386.07 | $ 42,243.99 | $ 8,857.92 |
| August | $ 46,703.94 | $ 62,162.70 | $ 15,458.76 |
| September | $ 36,810.45 | $ 46,923.49 | $ 10,113.04 |
| October | $ 32,715.04 | $ 41,727.78 | $ 9,012.74 |
| November | $ 66,659.91 | $ 84,849.39 | $ 18,189.48 |
| December | $ 22,051.49 | $ 28,279.58 | $ 6,228.09 |
| **Housing vs Price List** | $ 406,986.40 | $ 529,074.70 | $ 122,088.30 |

**Carpet Audit 2002-2006**
**PM Carpet and Housing vs Price List Summary Sheet**

| 2005 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **PM Carpet** | | | |
| January | $ - | $ - | $ - |
| February | $ - | $ - | $ - |
| March | $ - | $ 357.84 | $ 357.84 |
| April | $ - | $ - | $ - |
| May | $ - | $ 6,480.13 | $ 6,480.13 |
| June | $ - | $ - | $ - |
| July | $ - | $ 2,181.12 | $ 2,181.12 |
| August | $ - | $ 6,984.66 | $ 6,984.66 |
| September | $ - | $ 2,490.51 | $ 2,490.51 |
| October | $ - | $ 2,319.84 | $ 2,319.84 |
| November | $ - | $ 3,733.79 | $ 3,733.79 |
| December | $ - | $ 2,446.34 | $ 2,446.34 |
| **PM Carpet Total** | $ - | $ 26,994.23 | $ 26,994.23 |

| 2005 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **Housing vs Price List** | | | |
| January | $ 33,757.10 | $ 44,368.46 | $ 10,611.36 |
| February | $ 6,323.42 | $ 8,372.75 | $ 2,049.33 |
| March | $ 25,929.86 | $ 33,742.39 | $ 7,812.53 |
| April | $ 32,974.18 | $ 42,934.16 | $ 9,959.98 |
| May | $ 21,078.70 | $ 27,457.07 | $ 6,378.37 |
| June | $ 45,970.45 | $ 59,612.61 | $ 13,642.16 |
| July | $ 20,980.92 | $ 27,360.65 | $ 6,379.73 |
| August | $ 71,129.25 | $ 91,664.00 | $ 20,534.75 |
| September | $ 41,444.95 | $ 54,002.51 | $ 12,557.56 |
| October | $ 43,333.76 | $ 56,910.77 | $ 13,577.01 |
| November | $ 49,381.56 | $ 63,648.37 | $ 14,266.81 |
| December | $ 20,020.82 | $ 29,646.02 | $ 9,625.20 |
| **Housing vs Price List** | $ 412,324.97 | $ 539,719.76 | $ 127,394.79 |

**Carpet Audit 2002-2006**
**PM Carpet and Housing vs Price List Summary Sheet**

| 2006 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **PM Carpet** | | | |
| January | $ - | $ 1,331.74 | $ 1,331.74 |
| February | $ - | $ 858.25 | $ 858.25 |
| March | $ - | $ - | $ - |
| April | $ - | $ 1,744.54 | $ 1,744.54 |
| May | $ - | $ - | $ - |
| June | $ - | $ 884.52 | $ 884.52 |
| July | $ - | $ - | $ - |
| August | $ - | $ 3,139.08 | $ 3,139.08 |
| September | $ - | $ - | $ - |
| October | $ - | $ - | $ - |
| November | $ - | $ - | $ - |
| December | $ - | $ - | $ - |
| **PM Carpet Total** | $ - | $ 7,958.13 | $ 7,958.13 |

| 2006 | Work Authorization Amount | URMC Price List Amount | Carpet Dispute Amount |
|---|---|---|---|
| **Housing vs Price List** | | | |
| January | $ 31,797.25 | $ 44,741.30 | $ 12,944.05 |
| February | $ 34,036.89 | $ 45,599.19 | $ 11,562.30 |
| March | $ 33,303.32 | $ 44,896.28 | $ 11,592.96 |
| April | $ 53,323.16 | $ 71,501.91 | $ 18,178.75 |
| May | $ 14,816.97 | $ 20,027.16 | $ 5,210.19 |
| June | $ 24,967.76 | $ 33,484.50 | $ 8,516.74 |
| July | $ 28,476.43 | $ 37,932.55 | $ 9,456.12 |
| August | $ 39,773.25 | $ 53,547.45 | $ 13,774.20 |
| September | | | $ - |
| October | | | $ - |
| November | | | $ - |
| December | | | $ - |
| **Housing vs Price List** | $ 260,495.03 | $ 351,730.34 | $ 91,235.31 |